UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UTE ROSS,

    *Plaintiff*,

v.                                                                    CASE NO. 11-CV-15078

COMMISSIONER OF                            DISTRICT JUDGE ROBERT H. CLELAND
SOCIAL SECURITY,                              MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 10, 13.)

Plaintiff was 53 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 7 at 13, 102.) Plaintiff's employment history includes work as an office manager for one month, a pharmacy technician for six years, and a receptionist for seven years. (Tr. at 127.) Plaintiff filed the instant claim on November 25, 2009, alleging that she became unable to work on January 6, 2007. (Tr. at 102.) The claim was denied at the initial administrative stages. (Tr. at 25.) In denying Plaintiff's claims, the Commissioner considered affective disorders and carpal tunnel syndrome as possible bases for disability. (*Id.*)

On May 3, 2011, Plaintiff appeared before Administrative Law Judge ("ALJ") David K. Gatto, who considered the application for benefits *de novo*. (Tr. at 13-24, 26-41.) In a decision dated May 26, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 24.) Plaintiff requested a review of this decision and the ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 23, 2011, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On November 16, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the

agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations

based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

>Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
>Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
>Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

  **D. ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of January 6, 2007, through the date last insured of December 31, 2010. (Tr. at 31.) At step two, the

6

ALJ found that Plaintiff's "carpal tunnel syndrome; neuropathyl; diabetes mellitus; status post multiple right toe surgeries; degenerative disc disease of the lumbosacral spine; obesity; depression/major depressive disorder; and anxiety" were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 31-34.) At step four, the ALJ found that Plaintiff could not perform any of her past relevant work. (Tr. at 39-40.) The ALJ also found that on the alleged disability onset date, Plaintiff was a younger individual – age 18 to 49 on the date last insured. (*Id.*) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 34-39.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 40-41.)

      **E.    Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was treated at the Hillside Center for Behavioral Studies from August to September of 2006. (Tr. at 184-90.) Upon intake in August 2006, Timothy Thomas, L.P.C., noted that Plaintiff had a "surgically repaired left ankle and major surgery to lift her colon and bladder." (Tr. at 186.) It was also noted that Plaintiff was obese and that she reported her pain level as three out of ten (with zero being none and ten being unbearable). (*Id.*) It was noted that Plaintiff attempted suicide in 1998 by taking an overdose of medication. (Tr. at 187.) Further, it was noted that Plaintiff's attention was appropriate, her affect was constricted, her mood was depressed and angry, her appearance was well-groomed, her thought process was intact/linear, her thought content was fluid/appropriate, her memory was intact, her judgment and insight were intact, she was fully oriented, her speech and language were logical and normal, there were no cognitive deficits, and her general knowledge and intelligence were average. (Tr. at 187.) Plaintiff was

diagnosed with "Major Depressive Disorder Recurrent Moderate" and was assessed a GAF score of 55. (Tr. at 188.)

Plaintiff was treated from January to October of 2007 by Paul Fortin, M.D., who performed surgeries on her right great toe (for ganglion cysts) and her left ankle. (Tr. at 191-94, 251-54, 332-52.) Plaintiff participated in physical therapy for her ankle. (Tr. at 262-71.) Plaintiff was also treated by Raad Kasmikha from March 2007 through July 2009. (Tr. at 195-208, 225-71.)

On February 11, 2008, Plaintiff underwent an EMG that showed "electrodiagnostic evidence of a bilateral, sensory, median mononeuropathy (carpal tunnel syndrome) at the wrists, mild on the right and borderline on the left." (Tr. at 250.) Plaintiff underwent a colonoscopy on December 22, 2008, with normal results. (Tr. at 208.)

Plaintiff was hospitalized in March 2009 because she was expressing suicidal ideation with the intention to overdose. (Tr. at 370-85.) Plaintiff was also treated at Abaris Behavioral Health from March 2009 through February 2010. (Tr. at 272-92.) It was noted that Plaintiff's attitude was defensive, that she was severely overweight, that her hygiene was good, her attire was appropriate, her psychomotor was normal, she was fully oriented as to person, place, and time, her memory showed some remote impairment, her intellect was average, her perception was normal, her thought process was relevant, she had some suicidal thought content, she had poor insight into her problems, and her judgment was fair. (Tr. at 274.) Plaintiff was diagnosed with "Major Depressive Disorder - Recurrent," "Generalized Anxiety Disorder," and "Impulse-Control Disorder." (Tr. at 275.) Plaintiff's prognosis was guarded. (*Id.*)

On February 3, 2010, it was noted that Plaintiff's attitude was friendly and cooperative, she was slightly overweight, her hygiene was good, her attire was appropriate, her psychomotor was normal, she was fully oriented as to person, place, and time, she had no apparent memory

8

problems, her intellect was average, her general range of expression was normal, her perception was normal, her thought process was circumstantial, but her thought content showed preoccupations in that she "perseverates with all the faults she finds in her relationship with her husband." (Tr. at 279.) It was also noted that Plaintiff "projects issues on her husband." (Tr. at 280.) Her prognosis was fair. (Tr. at 280-81.)

On March 31, 2010, Plaintiff was examined at the request of Disability Determination Services ("DDS") by Cheryl D. Lerchin, M.D. (Tr. at 293-95.) Dr. Lerchin noted that "[f]or all these complaints the patient treats only with her primary care physician with medication only" and that she "only had one course of physical therapy postoperatively after the surgery on her left foot." (Tr. at 293.) It was also noted that Plaintiff "ambulates independently" and that Plaintiff "states that she is functionally independent with activities of daily living [but] admits [] that due to her depression she often spends several days at a time sitting in a chair in one area of her home and does not make an effort to perform many of her activities of daily living." (Tr. at 294.) Plaintiff was "able to complete tandem gait, heel walking and toe walking" and "was alert and oriented x3." (*Id.*) Plaintiff's "[c]ranial nerves II-XII were grossly intact," her "[s]trength was 5/5 throughout," and her "[s]ensation was intact to light touch, pinprick and proprioception." (*Id.*) In addition, Plaintiff's "[c]oordination was intact to finger-nose and heel-shin testing" and there was a "full range of motion of the knees bilaterally" and "full range of motion of the wrists bilaterally." (*Id.*) Dr. Lerchin summarized her findings:

> While she does have EMG findings consistent with some diabetic peripheral neuropathy as well as deQuervain's tenosynovitis, there are only some mild physical exam findings in conjunction with these diagnoses and no objective physical exam findings in conjunction with the patient's complaint of chronic knee pain. I do believe that her history of severe depression and anxiety is contributing to her experiencing pain out of proportion to objective findings and to her decreased functional status compared to that which would be expected. Based on the physical exam findings consistent with deQuervain's tenosynovitis and EMG findings

9

consistent with mild carpal tunnel syndrome I would limit any repetitive motion or use of power tools with the hands. I would also limit lifting to no more than 15 to 20 pounds. Due to the lack of other significant physical exam findings, however, I would not recommend other restrictions at the current time.

(Tr. at 295.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on April 7, 2010, by Rochelle Baron-Wong, concluded that Plaintiff is able to occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday and is unlimited in her ability to push or pull. (Tr. at 301.) The assessment also found that Plaintiff should never be required to use a ladder, rope, or scaffolds and that she should only occasionally perform other postural activities. (Tr. at 302.) There were no manipulative, visual, communicative, or environmental limitations established except that Plaintiff should not be subject to vibrations. (Tr. at 303-04.) The assessment noted that Plaintiff's "statements regarding a disabling physical condition are inconsistent with the MER [medical evidence of record]. She is capable of performing light work as reflected in this RFC." (Tr. at 305.) The assessment also noted the medical source statement provided by the consultative examining physician, Dr. Lerchin, and indicated that the assessor gave Dr. Lerchin's statements great weight. (Tr. at 306.)

A Psychiatric Review Technique was completed by Thomas Tsai, M.D., on April 8, 2010. (Tr. at 308-21.) Dr. Tsai diagnosed affective disorders (major depressive disorder) and found mild limitations as to activities of daily living and moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace. (Tr. at 308, 311, 318.) Dr. Tsai stated that Plaintiff's "statements concerning having a disabling psychiatric condition are not fully accepted" and that Plaintiff "is capable of simple, unskilled work." (Tr. at 320.)

Dr. Tsai also completed a Mental RFC Assessment on April 8, 2010. (Tr. at 322-25.) The assessment concluded that Plaintiff is moderately limited in her ability to understand and remember detailed instructions, her ability to carry out detailed instructions, her ability to maintain attention and concentration for extended periods, and her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, but was otherwise not significantly limited in understanding, memory and sustained concentration and persistence. (Tr. at 322.) The assessment also concluded that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors as well as to respond appropriately to changes in the work setting, but is otherwise not significantly limited in social interaction or adaptation. (Tr. at 323.) The assessment concluded that Plaintiff "can do unskilled" work. (Tr. at 324.)

On May 19, 2010, an MRI of the lumbosacral spine showed a "[h]erniated disc laterally on the right L5-S1 compromising the exiting nerve root within the intervertebral foramen" and "[l]umbar degenerative this [sic] disease and facet degenerative changes as above." (Tr. at 408.)

On April 26, 2011, Plaintiff was again evaluated at Abaris Behavioral Health, the same diagnoses were made, and a GAF score of 61 was assessed. (Tr. at 421.)

Plaintiff takes the following prescription medications: Aldactone, Allegra, Chlordiaz, Cymbalta, Darvocet, Flexeril, Glucophage, Ibuprofen, Klonapin, Maxzide, Naproxen, Neurontin, Prilosec, Synthroid, Trazadone, and Wellbutrin. (Tr. at 174, 241-42.)

In her daily activity report, Plaintiff stated that she makes breakfast, lets her dog outside, feeds the dog, watches television with her legs up, does dishes and laundry, walks around the block with her dog, but keeps a chair in every room because she can only stand for about ten minutes at a time. (Tr. at 160-61.) Plaintiff takes care of her own personal needs, cooks frozen dinners, does

11

light cleaning, goes outside daily, takes walks, drives and rides when going out, shops by telephone and via her computer, handles personal finances, socializes with her children and goes to the weight loss center. (Tr. at 161-64.) Plaintiff stated that she does not read because she has difficulty concentrating and that she has to read instructions "over and over agin." (Tr. at 165.)

The ALJ asked the vocational expert ("VE") to consider a person with Plaintiff's background whose

> impairments were to limit that hypothetical woman to work at the light exertional level as defined by the DOT in the regulations with occasional climbing and stairs and ramps and no climbing of ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching or crawling, no exposure to vibrations or hazards such as heights or machinery; and the work would further be unskilled with no rapid or frequent changes in work routine due to low stress tolerance.

(Tr. at 22.) The VE responded that such a person could perform the 6,000 packer jobs, the 4,000 sorter jobs, and the 8,000 small product assembler jobs available in Southeastern Michigan at the light, unskilled level. (Tr. at 22-23.)

### F.     Analysis and Conclusions

### 1.     Legal Standards

The ALJ determined that during the time Plaintiff qualified for benefits, she possessed the residual functional capacity to perform a limited range of light work. (Tr. at 34-39.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 10.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ's RFC analysis and hypothetical did not account for Plaintiff's moderate limitations in concentration, persistence and pace and, thus, requires a remand under sentence four. (Doc. 10 at 7-10.) In addition, Plaintiff contends that the ALJ's RFC analysis did not account for Plaintiff's physical limitations caused by her severe impairments of carpal tunnel syndrome and neuropathy. (*Id.* at 10-11.)

### a. Unskilled Work & Moderate Limitations in Concentration, Persistence & Pace

Plaintiff contends that "although the ALJ relied on the expert opinion of Dr. Tsai, it is clear that the ALJ in no way accounted for limitations to simple instructions and to simple one to two step tasks in forming hypothetical questions or making an RFC determination." (Doc. 10 at 9.) As to Plaintiff's contention that the ALJ's RFC finding that Plaintiff was able to perform unskilled work failed to account for her moderate limitations in concentration, persistence and pace and thus requires a remand under sentence four, this argument is "not uncommon and the case law resolves

it both ways." *Hernandez v. Comm'r of Soc. Sec.*, No. 10-cv-14364, 2011 WL 4407225, at *9 (E.D. Mich. Aug. 30, 2011) (collecting cases). The *Hernandez* court stated that

> a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace . . . . However, the Court also finds that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of, for example, "unskilled work" but excludes a moderate limitation in concentration. Rather this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's hypothetical and RFC assessment.

*Id.* at *10 (citations omitted).

In the instant case, the RFC analysis was limited to jobs at the light unskilled level, but there was no express limitation to simple, one- to two-step tasks. (Tr. at 22-23.) However, looking at the record as a whole, I suggest that substantial evidence supports the ALJ's hypothetical and assessment. Plaintiff was consistently assessed as having appropriate attention, intact and linear thought process, intact judgment and insight, orientation as to person, place, and time, logical and normal speech, and average intelligence with no cognitive deficits. (Tr. at 187, 274, 279, 294.) Even after finding moderate limitations in concentration, persistence or pace, Dr. Tsai stated that Plaintiff's "statements concerning having a disabling psychiatric condition are not fully accepted" and that Plaintiff "is capable of simple, unskilled work." (Tr. at 320.) Furthermore, in the RFC Assessment, Dr. Tsai concluded that Plaintiff "can do unskilled" work. (Tr. at 324.)

I therefore suggest that the record as a whole provides substantial evidence supporting the ALJ's hypothetical and the RFC assessment limiting Plaintiff to unskilled work. (Tr. at 18, 22, 45, 566-68.) *See Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (substantial evidence supported ALJ's decision where, although the psychiatrist found "moderate" limitations in the plaintiff's ability to maintain attention and concentration for extended periods, the psychiatrist noted the plaintiff's daily activities and concluded that the plaintiff was capable of performing

simple tasks on a sustained basis); *Burnett v. Comm'r of Soc. Sec.*, No. 10-cv-14739, 2012 WL 3870362, at *7 (E.D. Mich. Sept. 6, 2012) (where physician finding moderate limitations in concentration, persistence and pace also concluded that the plaintiff is able to perform unskilled work, ALJ's reliance on limitation to unskilled work was not improper); *Cummings v. Comm'r of Soc. Sec.*, No. 10-11621, 2011 WL 3958473 (E.D. Mich. Sept. 8, 2011) (ALJ's omission of concentration and pace limitations in the hypothetical was reasonable where doctor who concluded that the plaintiff had "serious concentration and attention difficulties" also found that his "ability to work may not be severely impaired as long as the job does not involve any appreciable amount of contact with people"); *Young v. Comm'r of Soc. Sec.*, No. 10-cv-11329, 2011 WL 2601014 (E.D. Mich. May 23, 2011) (although the plaintiff cited to moderate limitations noted in the assessment, the plaintiff failed to mention that the same assessment also concluded that the plaintiff was capable of unskilled work). I therefore suggest that the ALJ's decision is supported by substantial evidence on this ground and should not be disturbed.

      **b.**    **RFC Analysis**

Plaintiff also contends that the ALJ's RFC analysis did not account for Plaintiff's physical limitations caused by her severe impairments of carpal tunnel syndrome and neuropathy. (Doc. 10 at 10-11.)

An EMG taken in February 2008 showed "mild" carpal tunnel syndrome on the right and "borderline" carpal tunnel syndrome on the left. (Tr. at 250.) There was no evidence that this, at most, mild carpal tunnel syndrome had any affect on functional capacity. Nor is there any evidence that neuropathy affected Plaintiff's functional capacity in any way. Dr. Lerchin found that Plaintiff's "[s]trength was 5/5 throughout" and her "[s]ensation was intact to light touch, pinprick and proprioception." (Tr. at 294.) In addition, Plaintiff had "full range of motion of the wrists

bilaterally." (*Id.*) Dr. Lerchin noted that although there were EMG findings consistent with diabetic peripheral neuropathy, "there are only some mild physical exam findings in conjunction with these diagnoses[.]" (Tr. at 295.) Therefore, Dr. Lerchin did not recommend any functional restrictions based on these impairments. (*Id.*) Moreover, the RFC assessment did not include any limitations due to carpal tunnel syndrome or neuropathy and concluded that Plaintiff "is capable of performing light work as reflected in this RFC." (Tr. at 305.) I therefore suggest that the ALJ's decision not to incorporate further restrictions based on carpal tunnel syndrome or neuropathy is supported by substantial evidence.

Dr. Lerchin also noted that "[f]or all these complaints the patient treats only with her primary care physician with medication only" and that she "only had one course of physical therapy postoperatively after the surgery on her left foot." (Tr. at 293.) As implied by Dr. Lerchin, such modest treatment is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007). I therefore suggest that substantial evidence supports the ALJ's findings as to residual functional capacity.

I further suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence as well as Plaintiff's own statements that she makes herself breakfast, lets her dog outside, feeds the dog, watches television with her legs up, does dishes and laundry, walks around the block with her dog, takes care of her own personal needs, cooks frozen dinners, does light cleaning, goes outside daily, walks, drives and rides when going out, shops by telephone and via her computer, is able to handle personal finances, socializes with her children and goes to the weight loss center. (Tr.

at 160-64.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3. Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                    s/ **Charles E. Binder**
                                                CHARLES E. BINDER
Dated: December 11, 2012                           United States Magistrate Judge

## CERTIFICATION

        I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  December 11, 2012                           By     s/Patricia T. Morris
                                                                                   Law Clerk to Magistrate Judge Binder